NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3705
_____

UNITED STATES OF AMERICA

v.

TIMOTHY BRYNER,

Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. Action No. 08-cr-263)
District Judge: Honorable Gustave Diamond
_____

Submitted Under Third Circuit LAR 34.1(a)
July 15, 2010
_____

Before: RENDELL, JORDAN, and GREENAWAY, JR., Circuit Judges

Opinion Filed: August 25, 2010

_____

OPINION
_____

GREENAWAY, JR., Circuit Judge

Timothy Bryner pled guilty to a two count indictment, charging him with receiving child pornography, in violation of 18 U.S.C. § 2252(a)(2); and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). The United States District Court for the Western District of Pennsylvania sentenced him to 100 months' imprisonment on each count, to run concurrently, to be followed by two 15-year terms of supervised release, also to run concurrently. The District Court also ordered that Bryner pay a special assessment of $100 on each of the counts, totaling $200.

Bryner challenges his sentence, arguing: (1) that the District Court erred when it failed to consider his personal history and characteristics at the sentencing hearing; and (2) that he is entitled to be sentenced anew because the District Court "never addressed" his argument that the child pornography Sentencing Guidelines are not "empirically-based" within the meaning of Kimbrough v. United States, 552 U.S. 85 (2007), and thus are entitled to less deference under 18 U.S.C. § 3553(a). Bryner also argues that his conviction and sentence for receiving child pornography violated the Double Jeopardy Clause of the Fifth Amendment, because that charge was "based on the same images" as was the charge of possession of child pornography. For the following reasons, we will affirm the District Court's Judgment.

## I.   Background

We write solely for the benefit of the parties, and therefore recount only the essential facts. A grand jury in the Western District of Pennsylvania returned a two-count

2

indictment against Bryner on August 31, 2009. Count I charged Bryner with receiving child pornography, in violation of 18 U.S.C. § 2252(a)(2), based on an exchange of child pornography on December 21, 2007. Count II charged Bryner with possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), based on a much larger collection of child pornography seized from his home on June 10, 2008.

A presentence investigation report ("PSR") was prepared on July 13, 2009, in advance of sentencing, and was incorporated into the District Court's "Memorandum Order and Tentative Findings and Rulings" ("Order"), dated August 12, 2009. In the PSR, the Probation Office calculated an advisory Sentencing Guidelines range of 168 to 210 months' imprisonment, resulting from a total offense level of 35 and a criminal history category of I.[1] Bryner underwent a psychological evaluation conducted by Dr. Robert F. Coufal, and also provided his attorney with information related to his history of overcoming an alcohol addiction, his exposure to pornography at an early age, and his physical ailments. Both the results of Bryner's evaluation and his personal history

_____

[1]According to the PSR, the total offense levels for the two counts were grouped together with the highest total offense level (Count I) applying. Bryner's base total offense level for Count I was 22. A two-level enhancement was added, under U.S.S.G. § 2G2.2(b)(2) for materials depicting a prepubescent minor or a minor under the age of 12. (PSR ¶ 17). An additional 5 levels were added under U.S.S.G. § 2G2.2(b)(3)(B) because the offense involved distribution for the receipt or expectation of receipt, of a thing of value, but not for pecuniary gain. (Id. ¶ 18). The final enhancement of five levels was added under U.S.S.G. § 2G2.2(b)(7)(D), for an offense involving 600 or more images. The adjusted total offense level was 38. Three points were subtracted for acceptance of responsibility. The final calculation of the total offense level was 35.

information were included in a "Memorandum in Aid of Sentencing" ("Memorandum"), submitted to the District Court by Bryner's attorney and filed under seal. (App. Vol. III, 101-150).

The Memorandum highlighted Bryner's health conditions and noted that he is the primary caretaker for his mentally handicapped son. (App. Vol. III, 101). In the Memorandum, Bryner requested a sentence of 60 months, as opposed to a sentence within the Sentencing Guidelines range of 168 to 210 months. (App. Vol. III, 102, 133).

During a joint change of plea and sentencing hearing on August 31, 2009, Bryner changed his plea to guilty. There was no plea agreement. (App. Vol. II, 83, 85). The District Court adopted its August 12, 2009 Order as final, and its resulting total offense level and criminal history category calculations were the same as those in the PSR.

During the sentencing hearing, Bryner's counsel argued for a downward variance, and requested a sentence of 60 months for each of the counts in the indictment, with the sentences to run concurrently. Bryner's counsel posited that a five-year sentence would be sufficient to serve the goals of 18 U.S.C. § 3553(a).

The District Court noted that Bryner's offense "was not as serious as some," and questioned the rationale of the five-point Guidelines enhancement for receipt of a thing of value, and the five-point Guidelines enhancement for the number of images in Bryner's possession. As a result, the District Court granted a variance resulting in Bryner receiving a sentence below Guidelines range. The District Court sentenced Bryner to 100

months on each count, to run concurrently. (App. Vol. II, 92). Bryner filed a timely appeal.

## II. STANDARD OF REVIEW[2]

In <u>United States v. Booker</u>, 543 U.S. 220, 261 (2005), the Supreme Court held that appellate courts should insure that district courts analyze the § 3553(a)[3] factors when determining sentences for criminal enterprises. After <u>Booker</u>, appellate courts are now to assess a district court's exercise of discretion "with regard to § 3553(a)." <u>Id.</u> "Guided by the § 3553(a) factors, <u>Booker</u>'s abuse of discretion standard directs appellate courts to evaluate what motivated the district judge's individualized sentencing decision." <u>Rita v. United States</u>, 551 U.S. 338, 364 (2007). "While reviewing courts may presume that a

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231, which grants to the "district courts of the United States ... original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." We have jurisdiction pursuant to 28 U.S.C. § 1291. This Court also has jurisdiction under 18 U.S.C. § 3742(a) to review the appeal of a sentence imposed under the Sentencing Reform Act of 1984.

[3] The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed - - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant: and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for - - (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ; (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . [that] is in effect on the date the defendant is sentenced; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

sentence within the advisory Guidelines is reasonable, appellate judges must still always defer to the sentencing judge's individualized sentencing determination." Id. "It is not the role of the appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence," except to the extent specifically directed by statute. Williams v. United States, 503 U.S. 193, 205 (1992) (quoting Solem v. Helm, 463 U.S. 277, 290 (1983)).

In Rita, the Supreme Court explained that after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party, making an individualized assessment based on the facts presented. 551 U.S. at 347-48.

A district court's "fail[ure] to consider the § 3553(a) factors" can create a procedurally unreasonable sentence. United States v. Levinson, 543 F.3d 190, 195 (3d Cir. 2008) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)). We have stated that "we are guided by the requirement that sentencing courts give 'meaningful consideration' to all of the factors in 18 U.S.C. § 3553(a)." See United States v. Olhovsky, 562 F.3d 530, 546 (3d Cir. 2009) (citing United States v. Cooper, 437 F.3d 324, 329 (3d Cir. 2006)). See also United States v. Grier, 475 F.3d 556, 571 (3d Cir. 2007) (where the Third Circuit held that the touchstone of reasonableness is whether the record as a whole reflects rational and meaningful consideration of those factors.)

6

A sentencing court may also consider the defendant's statements at the sentencing hearing in determining the sentence. See 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); U.S.S.G. § 1B1.4 ("In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning background, character and conduct of the defendant, unless otherwise prohibited by law."); see also Fed. R. Crim. P. 32(i)(4)(A)(2) (requiring the sentencing court to provide the defendant an opportunity to speak before imposing sentence). Further, a sentencing court may impose a sentence outside of the Guidelines range, if it believes the sentence is reasonable in light of the facts set forth in 18 U.S.C. § 3553(a).

### III.  ANALYSIS

Initially, Bryner argues that the District Court failed to credit or consider the psychological report submitted by Dr. Coufal in making its sentencing determination. According to Dr. Coufal's report, Bryner has a history of health problems, some of which Dr. Coufal suggests may have "contributed to the underlying offense." (App. Vol. III, 102-03). Bryner also contends that, according to Dr. Coufal's evaluation, Bryner had a "positive prognosis for overcoming his interest in child pornography," and that he was at

7

a low risk to recidivate because his "decision" to end his use of child pornography "mirrors his resolve to quit drinking after his arrest for DUI."[4] (Id., 101, 104).

The District Court stated that it had read Bryner's Memorandum, and had considered his medical condition. However, the District Court did not believe Bryner's medical condition warranted a greater downward variance than it granted. (App. Vol. II, 97-99).

"The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." Gall, 552 U.S. at 50 (internal quotations and citations omitted).

In his brief, Bryner makes a general statement that "Kimbrough authorizes" the District Court to grant a downward variance, and though he gives no examples, he asserts that "courts across the country are beginning to apply Kimbrough in the context of § 2G2.2." (App. Br. at 34).

Although Kimbrough was decided within the context of the dichotomy between powder cocaine and crack cocaine sentencing, pursuant to the Sentencing Guidelines, it stands for the broader proposition that a district court may exercise its discretion in sentencing. This Court has held that:

---

[4]According to Appellant's brief, Bryner has been sober since 1985. (App. Vol. III, 103).

> [A] district court is not required to engage in "independent analysis" of the empirical justifications and deliberative undertakings that led to a particular Guideline. ("[A judge] should not have to delve into the history of a guideline so that he can satisfy himself that the process that produced it was adequate to produce a good guideline.")

United States v. Lopez-Reyes, 589 F.3d 667, 671 (3d Cir. 2009) (internal citations omitted). We have further held that "Kimbrough does not force district or appellate courts into a piece-by-piece analysis of the empirical grounding behind each part of the sentencing guidelines." Id. (quoting United States v. Duarte, 569 F.3d 528, 530 (5th Cir. 2009)). Thus, it is not the Court's responsibility to disprove Bryner's "empirical basis" argument. Kimbrough does not assure the extent of the exercise of a court's discretion in sentencing, and does not assign a numerical value or level to a district judge's determination of the extent of a particular variance in sentencing.

The record indicates that the District Court heard and considered argument from defense counsel, and weighed the § 3553(a) factors in making its determination. Specifically, the District Court stated, in pertinent part, that "[T]he sentences are assigned and required under provisions of Title 18, United States Code, Section 3553(a) to reflect the seriousness of the offense, the nature of the offense, the nature and character of the defendant and should be designed to promote respect for the law, deterrence to others and to the defendant from committing similar crimes, incapacitating the defendant from committing particular crimes and to serve to punish, which I believe is always an incident of any rational sentence, the defendant for committing the offense." (App. Vol. II, 92).

9

Bryner contends that the District Court provided no more than a "cursory glance" at the Memorandum, and that "the sum total of the district court's discussion of the Memorandum was a bare bones statement that it had read it." (Reply Br. at 3). However, this Court has also made it clear that "[t]here are no magic words that a district judge must invoke when sentencing ... ." Cooper, 437 F.3d at 332. "A sentencing court need not make findings as to each factor if the record otherwise makes clear that the court took the factors into account." United States v. Lessner, 498 F.3d 185, 203 (3d Cir. 2007). See also Cooper, 437 F.3d at 329 (Sentencing courts need not discuss each of the § 3553(a) factors "if the record makes clear the court took the factors into account in sentencing."). The District Court did take the Memorandum into account, and repeatedly assured Bryner, on the record, that it had done so. (App. Vol. II, 99).

Bryner's Double Jeopardy argument also fails. Bryner states that because Count I was "based on the same images" as Count II, Double Jeopardy is implicated. The record indicates otherwise. In the Appendix for Appellant, Volume II, page 30, the District Court responds to an objection by Bryner's counsel, related to the $200 special assessment. Counsel states that the $200 is "essentially punishing" Bryner for the same act - possession and receipt. However, the District Court noted specifically that Counts I and II are two separate offenses, and that Bryner entered a plea of guilty to each of those separate offenses.

Under the Fifth Amendment's Double Jeopardy Clause, no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. We have held that the Double Jeopardy Clause bars conviction for both receipt and possession of child pornography where the identical pornographic materials supply the basis for both offenses. United States v. Miller, 527 F.3d 54, 71-72 (3d Cir. 2008).

Here, Count I charged Bryner with receiving 82 images of child pornography, and Count II charged him with possession of "in excess of 1000 images of child pornography" 6 months later. (App. Vol. II, 89-90). The images charged in Count II were found on an external hard drive and differed from those in Count I. (PSR ¶ 8). Later, forensic study of the hard drive confirmed that Bryner had been downloading child pornography from 1999 through June 2008. (App. Vol. II, 28). The child pornography found on his external hard drive constituted the evidence for Count II of the Indictment, which was not identical to the images charged in Count I. (App. Vol. II, 21).

As the District Court properly noted - - Count I and Count II are two separate offenses. Bryner acknowledged, during his plea allocution, that the time periods for each count were different; and then entered a plea of guilty to each offense. (App. Vol. II, 77, 78). The Double Jeopardy Clause is not implicated here based on the facts before this Court. Bryner's claim must fail.

## IV. Conclusion

For the foregoing reasons, we will affirm the Judgment of the District Court.